Good morning, Your Honor. And good morning to the panel. My name is William Melcher. And on behalf of my esteemed colleague here, we have the pleasure of representing Mr. Dinkins in this appeal. And we thank the court for taking this case up, which does present a few interesting issues. But I think I can boil it down quite simply. In this case, we believe that the district court was required to find drug quantity by beyond a reasonable doubt standard. And under the facts in this case, I don't think that the district court could have found the drug quantities in counts 2 and 3 beyond the 50-gram threshold. Was that test by agreement with the U.S., or did the U.S. want it by a preponderance? Well, I think that the government argues that because we're at the sentencing phase, the district court could have found by a preponderance of the evidence standard. However, the cases that we've cited in our reply brief, that is Velasco, Heredia, and Labrada-Pastamonte, I believe require that the district court, because we're establishing a mandatory minimum sentence of 20 years in this case, has to find drug quantity beyond a reasonable doubt. But didn't those cases talk about the statutory maximum, if the statutory maximum is going to change? They don't reference a statutory minimum. And here, the maximum was life, regardless of which bucket he fell into. That's exactly correct. Because there was an 851 filing in this case, it changed the analysis a little bit. But because we have a life sentence regime, but we also have to find in each case, and this I think would also apply to count 1, which is not in dispute in this case, but we still have to find drug quantity as well as establish the fact that there was a prior felony drug conviction. But in each case, the drug quantity drives that life sentence beyond. For example, I think count 1, we start at a sentence of between 5 years and 40 years. However, because there was an 851 filing, that mandatory minimum goes to 10 years and the statutory max goes to life. But we still in each case have to find at least in count 1, at least 5 grams, and in counts 2 and 3, at least 50 grams. So I think in each case, we're still required to find the threshold, whether it be over 5 grams or over 50 grams. But there's no dispute that it's over 5 grams. I guess Apprendi is looking at talks in terms of statutory maximum. So are you asking us to extend the law to say that also in the case of a mandatory minimum, that those facts must be found beyond a reasonable doubt? Are there other cases that relate specifically to statutory mandatory minimum? I think it was in Labrada-Bustamante where the court says, it's only because we presume that the district court has proven beyond a reasonable doubt of drug quantity that the mandatory minimum sentence does not violate Apprendi. Now, when I actually read that, I was a little taken aback. But I think the reasoning goes back to the actual statute of conviction. For example, like I was referencing in count 1, again, which is not in dispute. But count 1 under 841B1B3, the statutory range for over a 5-gram conviction is between 5 years and 40 years. However, because we have the 851 filing in this case, that statutory range goes from a 10-year mandatory minimum to life imprisonment. However, we still have to find the drug quantity is above 5 grams. So that extra fact, that additional fact, I think comes into play with regard to Apprendi. The same goes with regard to counts 2 and 3. We have a 50-gram threshold that will bump up the mandatory minimum from 10 years to 20 years, but we still have to find the drug quantity in each case. There's no dispute that was 5 grams, right? Yes, count 1 is not in dispute. It's counts 2 and 3 that were slightly above 50 grams initially that are in dispute. And I guess the finding as to whether it was above or below 50 grams, which is what is in dispute, doesn't affect the statutory maximum. It does not affect the statutory maximum because of the fact that we have the 851 filing. But we still have to get to that initial threshold to begin with. Your client was lucky that they didn't claim another previous conviction, right? That's absolutely true, Your Honor. I mean, it could have really been jacked up way high. That's true, Your Honor. They could have, but they did not. And it didn't raise the fact that your client waived the right to appeal at some point there, right? Well, there was some discussion about that at the change of plea hearing, and at least the district court found that there was considerable ambiguity in the plea agreement. So I think that they fleshed that out, and I believe it's in the record that he did, Mr. Dinkins did preserve his right to appeal the drug quantity determination finding. Why isn't this a matter of determining credibility between the two experts and say that that's a matter for the court to decide? I believe that it is quite a matter of assessing the credibility, and I think that the record reflects that the defense experts' results were right in line with both testings that were done, whereas the government expert was shown to not be correct. So I think a lot of it weighs on assessing the credibility of the experts. I think the district court did not only an excellent job of fleshing out the testimonies between the two experts, but also posed an excellent question in this case, and that is when the testimony was in conflict, when we had two different opinions as to why the drugs had decreased in weight over a 10-month period of time, posed this question, that is, what would you expect if we weighed them a second time? And we know that the DEA expert Caldwell said, well, the reason why we had the initial decrease in weight was because of water vapor evaporation. Water is used in the manufacture of cocaine base. We store the drugs in double heat-sealed bags. However, these bags are still permeable to water evaporation. Is there any case like this that you're familiar with? Not that I've found, Your Honor. And I believe both experts also agreed that there's nothing in the literature that discusses, okay, does water evaporate from the bags? Do organic solvents evaporate from the storage bags? There wasn't anything that either expert could testify to. What do you think the district court did wrong here? I think the district court erred by relying a little bit too much on the statements that were made by Mr. Dinkins during his negotiations and which were included in his plea agreement. Now, we're not disputing that he made those statements, but as to counts two and three, where he references in street slang that, yes, I will sell you two ounces of cocaine base, I believe that the district court, in trying to resolve the conflicts between the two experts, and I think even in its findings that I can't resolve the conflicts. It's kind of a common sense thing to say, okay, this is what he agreed to do. There doesn't seem to me, at least, to be anything unfair in saying we have dueling experts and you could go either way with them, but I'm going to hold him to what he said he was going to do. I would agree. If this were a drug conspiracy case, I believe that those statements would carry a great deal of weight. It might even be dispositive of that, of the drug quantity. But he sold something that was either a smidge under or a smidge over. Sir. And he said he was going to do the quantity that he said he was going to do. Well, I follow the court on that exactly. There's a couple of points that I thought about as far as that goes. The first question is, being a drug conspiracy case, what we're looking at, what we're trying to determine is what he actually distributed on that date, on the date of the transaction, not necessarily what he said that he was selling, but what he advertised. And I know at the district court level they were talking about, well, what if he was engaging in puffery or trying to short the buyer. Again, I think the relevant question is, what did he distribute on that date? Now, we know that he said that I will sell you two ounces in each case. However, I think when even the original weight was taking place by the DEA expert, I don't even think that those two ounces, which he said he was selling, the amount of drugs even correlated exactly to two ounces. There was still a margin of error there. So I think if we're resolving, trying to resolve the conflict, is it below 50 or under 50, by saying, okay, well, you said you sold two ounces, so we're going to hold you exactly to 56.7 grams of cocaine base, I think is relying a little bit too much on those statements. But it wasn't just the statements, right? The weighing at the time of the transaction showed that it was over 50 grams as well. So you had the weighing, you had his statements, and we're supposed to view this in the light most favorable to the prosecution. Yes, absolutely, Your Honor. We have the statements, and we don't know exactly what the drugs weighed at the time of the transaction. We know what the expert, the DEA expert, weighed them as being approximately one month after, and he found that two quantities were slightly above 50 grams. However, the only opportunity the defense has to test those drugs is obviously sometimes afterwards. When they were weighed, and this is again now some 10 months after, they were found to be considerably below 50 grams. However, the government's theory as to why the weight had diminished was shown not to be correct in a further testing. So, yes, we're weighing the credibility. We have to obviously look at the drugs at the present time and try to determine what they weighed at the time of the transaction, and I don't believe that the government's theory held water in that regard. I see that I'm out of time, Your Honor, if I could reserve a few minutes. Yes, I could. Good morning, and may it please the Court. Assistant United States Attorney Kevin Lawley on behalf of the government. At the outset, I would just like to address a question that Judge Seiler presented to counsel for the defendant, and that was the scope of the appellate waiver. Below, it was the government's position that there was a complete appellate waiver that would preclude appeal as to this issue. The district court, given that he was going to hold a hearing on the particular issue of drug weight, carved out that particular issue, and the government, to have the issue go forward, agreed to that particular issue. So it was in there, but you agreed to let him take the appeal? As to that one specific issue, which gets us to the singular issue that is on appeal here today, and that is whether or not the United States District Court, the Honorable George King, made whether or not his two factual findings, that the defendant distributed 54.9 grams of crack cocaine on August 24, 2004, and that the defendant distributed 52.8 grams of crack cocaine on August 27, 2004, whether those are properly supported by the evidence. And the government would respectfully submit that those factual findings are not clearly erroneous, and that when you look at the evidence in the light most favorable to the government, that any rational juror could find that those factual findings to be supported by the evidence as presented in the court hearing, particularly when you resolve all inferences in favor of that particular finding, and as well as all disputes in favor of that finding. Do we use the same standard that we would use on the sufficiency of the evidence after a jury trial, or is it something different? Well, Your Honor, it's the government's position, and as argued in the brief, that we believe that the proper standard should be by the preponderance. However, we also believe that regardless of the circumstance, regardless of which standard this court elects to apply, the government has met that standard. We don't have to reach that issue, I guess, whether it's preponderance or reasonable doubt, because the court found beyond a reasonable doubt, right? That's correct. If you limit it to the court's finding, and you had a question before as to whether or not the government concurred, once again, by way of a little procedural posture which isn't in the record, there were many, many hearings that preceded this particular hearing, at which there was the proceeding on the drug weight, and Judge King made clear that in his estimation, he deemed it to be a court trial on the issue of drug weight, and that that was how it was going to proceed, and to resolve the matters, you know, as with the appellate waiver, the government did agree, at least for that proceeding, to go forth with the beyond a reasonable doubt standard. And if this court is to apply that standard, then we are, then the government is entitled to have the evidence viewed in the light most favorable to it, with all inferences drawn in its favor. And in that circumstance, you have a situation where you have the uncontradicted testimony of the forensic chemist who weighed the drug evidence within a month of the drug evidence being acquired. And it is uncontradicted, because while the drug weight did change over time, the defendant's chemist, Dr. Truding, was specifically asked on more than one occasion whether or not it was his position that Dr. Caldwell had error in his original calculation of the drug weights, and Dr. Truding would never say that. He insisted that he wasn't there. He didn't know if any mistakes had been made. The only thing that he disputed was the explanation for the weight change. He thought that there could be a decrease in weight of the magnitude reflected, but that it would be due to more than just water evaporation, which is the primary reason for the loss cited by Mr. Caldwell, the government's expert. And so the drug evidence is contained in a plastic bag, sealed, and then resealed again. It was in a double-sealed plastic bag. So the drug evidence is contained in a plastic bag, sealed, and then resealed again. There was evidence in the record from Dr. Caldwell that these double-sealed or that the bags themselves are permeable, that water is a volatile substance that at regular room temperature will evaporate and will, in fact, go through these bags. Well, I didn't understand. Were there two bags? Two bags, Your Honor. Two bags. So a reasonable inference would be that the agent who had originally weighed it had made an error, because when you find such a difference in weight on the second weighings and they don't have an adequate explanation, that inference could be drawn. But your position is that's not a necessary inference, that you could draw an inference that there was no error. Is that correct? Absolutely. With respect to the various weighings, the initial weighings by Mr. Caldwell, which once again is completely uncontradicted as to the accuracy, that occurred one month after the drugs were seized, at least as to these two items of drug evidence, because there are three items of drug evidence weighed at two different times. But as to these two items, they were weighed within one month of being seized. The initial retesting was conducted 16 months later. And that retesting, so 17 months after the drugs were sold, 16 months after the drugs were initially tested. The second re-weigh occurred 10 months after that. So you're talking 27 or so months after the drugs had been acquired, 26 months after they had been initially tested. And there was testimony in the record, and actually by both experts, that in the manufacturing process of cocaine-based, water is used in order to create the product. And that water will dissipate and evaporate over time, with the heaviest evaporation coming on the front end, because you have the greatest amount of water, and that will evaporate into the air. Mr. Caldwell further testified that in his experience, and he has examined hundreds and hundreds of exhibits of crack cocaine, as well as manufactured crack in a laboratory setting, that he regularly sees specimens ranging from 5 percent to 30 percent of water weight, in terms of what percentage of the product consists of water weight. So he can see up to a third of the entire weight reflected in water weight. He indicated that the amounts here, the decrease of approximately 7 to 8 grams, with respect to the two items of drug evidence that were directly at issue here, was not out of the ordinary, and in fact was consistent with what he had seen in the various re-weighs that he had done in the past year. How does he explain that the second re-weigh on the transaction too, because it went up slightly in weight? Well, the fact that it went up slightly in weight... Four-tenths of a gram or something. That's correct. As to Dr. Truding testified that any time that you weigh... These were questions not asked of Mr. Caldwell, but Dr. Truding testified that any time you weigh a particular item over and over and over again, using the same scale, you're going to get analytic variability of up to 3 or 4 percent. So it can go up by up to 3 percent. It can go down by up to 3 percent. Dr. Truding further testified that given how far out we were at the time of the second re-weigh, two years later, that any additional evaporation would likely be consumed in the analytic variability. Now, that was true as to two of the specific items of drug evidence, but as to the item of drug evidence in Exhibit 1, or Count 1, which wasn't specifically contested in the proceedings but yet was part of the re-weighing, in that instance it continued to drop precipitously. Between the initial re-weigh and the first re-weigh, it dropped upwards of 4 grams, and then between the first re-weigh and the second re-weigh, it dropped an additional 4 grams. Were these weighed in the bags? It's my understanding, and from the testimony that was presented, that the way in which the process occurs is that you have a weight for the bag, and then you essentially weigh it in the bag and then subtract the amount of the weight of the bag. That way you don't have an issue of contamination of evidence. Would the Court like me to address the issue of the preponderance, or is it? I don't think we have decided that, unless these other judges want to know. I don't think so. Then, unless Your Honors have any additional questions, I will submit. Thank you. Are there any questions of the balance counsel? You have used your time. Yes. Just any questions? Yes. There don't appear to be any. Thank you. Thank you, Your Honor. The case just argued is submitted for decision. We'll hear the next case, which is Martina's.
judges: Siler, Schroeder, Ikuta